**FILED**

MAR 0 7 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODY F. CHAMBERS<br>Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| JOHN A. KNIGHT, individually,<br>COLIN LUCAS-MUDD, individually<br>and AITEKZ plc,<br>Defendants, | )<br>)<br>)<br>)<br>) |

18 CV 2906 - BAS - BGS

## **AMENDED COMPLAINT**

Plaintiff, JODY F. CHAMBERS, *pro se*, complains as follows of defendants,

JOHN A. KNIGHT, COLIN LUCAS-MUDD, and AITEKZ plc:

### **Parties**

1.    Plaintiff Jody F. Chambers ("Chambers") is a businesswoman and

California citizen residing in San Diego County and in this District. All of the

Defendants owe Chambers money for services rendered. She is also an initial

shareholder and stakeholder in Defendant Aitekz plc.

2.    Defendant Colin-Lucas Mudd ("Lucas-Mudd") is a British subject

who is Usually Resident (a British legal term of art for "domiciled") in the United

Kingdom ("UK"), presently at 3 Victoria Place, Love Lane, Romsey, Hampshire,

England, SO51 8DE.

3.    Lucas-Mudd was, on information and belief, at all material times

Chairman and CEO of Scredible plc (hereafter "Scredible I"), a Public Limited

1

Company organized in 2014 and dissolved in 2016 under the laws of Ireland. On information and belief, the directors of Scredible I had been directors of ten other Irish companies between them; six of which companies are now dissolved.

4.     Lucas-Mudd is also a founder and one of three Directors of Defendant Aitekz plc ("Aitekz"), an AI/Machine learning technology enterprise initially organized in England in 2016, under the name Scredible plc, as a Public Limited Company, Number 10117990, with its initial Registered Office Address at Aumara, Headley Road, Grayshott, Surrey United Kingdom, GU26 6LG in England and Wales. (hereafter "Scredible II").

5.     Scredible II changed its name to Aitekz in August, 2017. On information and belief, to avoid service of legal papers by a creditor in October, 2018, Aitekz changed its Registered Office Address to its present address: 3 Victoria Place, Love Lane, Romsey, Hampshire, England, S051 8DE.

6.     At all material times, in addition to being Usually Resident in the UK, over the years Lucas-Mudd has resided in Encinitas, California, in San Diego County, and Felton or Soquel, Santa Cruz County, California, and has conducted business as Chairman, CEO and Director of Scredible I and Scredible II - Aitekz, from Felton and Soquel, in Santa Cruz County.

7.     Defendant John A. Knight ("Knight") is a British subject who is Usually Resident in the UK, at 39 Bouverie Avenue, Salisbury, Wiltshire, United Kingdom, SP2 8DU. Knight and his wife, Selina M. Knight, also hold title to

California real estate located at 22548 Ravensbury Avenue, Los Altos Hills, Santa Clara County, CA 94024, as Co-Trustees of the Knight Living Trust. Knight is one of the three Aitekz Directors.

8.　　At all times material to this action, the aforesaid 22548 Ravensbury Avenue, Los Altos Hills CA 94024, has been one of Knight's residences apart from his UK domicile.

9.　　Aitekz has also held itself out to the public and potential investors in California and elsewhere as having its California office located at 22548 Ravensbury Avenue, Los Altos Hills, Santa Clara County, CA 94024. This address is one of Knight's aforesaid residences, *i.e.*, the real estate to which Knight and his wife, Selena, are owners of record as Co-Trustees of the Knight Living Trust.

10.　　At all times material to this action, as an Aitekz Director, Knight has conducted Aitekz business from, among other places, the Aitekz office in California at 22548 Ravensbury Avenue, Los Altos Hills, Santa Clara County, CA 94024. On information and belief, Knight has at least $1,000,000 USD in unencumbered equity in the real estate that doubles as the Aitekz California office and one of Knight's residences, despite that he is domiciled (Usually Resident) in the UK.

11.　　Of the sixteen founding shareholders of Aitekz (formerly Scredible II), at the time of incorporation nine had a residence in the United States, six in California; three of whom reside or did reside in San Diego County.

12.    The harm alleged herein and suffered by Chambers, all Aitekz stakeholders and creditors has emanated from California. Directors of companies incorporated in the UK are responsible for running an incorporated business. The Aitekz Directors list themselves as Usually Resident in the UK in the Aitekz Certificate of Incorporation (a public document on file with Companies House, UK). However, also under applicable UK law there is no requirement for UK company directors ever to live or visit the UK during or after their appointment as Directors. To Aitekz shareholders' and creditors' detriment, Lucas-Mudd and Knight abuse and take unlawful, fraudulent and unfair advantage of the UK law that allows them to operate Aitekz from California (outside the UK).

13.    On information and belief, Aitekz is insolvent, and therefore operating illegally under UK law. Specifically, Chambers believes Aitekz is committing fraudulent trading and wrongful trading, which is a crime and a civil wrong under UK law, including but not limited to the UK's Section 214 Insolvency Act 1986. Specifically, but not limited to the following, Aitekz's Strategic Report and Report of the Directors and Financial Statements for the Year Ended 30 April 2018, a public document on file with Companies House, misleads Aitekz's California stakeholders, and all stakeholders (investors and creditors), when among other things it states in a false or materially misleading manner how despite that "the investment deficit makes the future ….uncertain given the founders' financing

4

limits…," "…the founders continue to inject development capital," and "…founder investment continues to be directed toward technology."

14.     As recently as the week preceding the filing of this Complaint, and while still insisting that Aitekz is operating legally, Knight made what Chambers believes are false or misleading representations with the intent to hinder, delay or defraud creditors by stating that in 2019 there are imminent "refunding opportunities" for Aitekz creditors, which creditors collectively hold roughly $350,000 of unsecured debt.

## Jurisdiction and Venue

15.     This Court has subject matter jurisdiction under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     This Court has general and specific *in personam* jurisdiction over all of the defendants. This Court has general *in personam* jurisdiction over all of the defendants, because they have conducted and continue to conduct substantial, continuous and systematic activities in California.

17.     This Court has specific *in personam* jurisdiction over all of the defendants, because (a) all of them have purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward California, thereby obtaining the benefits and protections of California laws; (b) the disputes alleged herein arise out of or have a substantial

5

connection with the defendants' contacts with California; and (c) this Court's exercise of jurisdiction would be fair and reasonable. California's long-arm statute, C.C.P. §410, authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California.

18.    All of the jurisdictional facts alleged above as a basis for *in personam* jurisdiction are entirely consistent with the Constitution of the United States or the Constitution of California, specifically with Due Process. And, specifically regarding Chambers' claims herein under the California Business & Professions Code §17200 *et seq.* ("Section 17200"), the power of the California courts to remedy business practices thereunder is coextensive with the reach of Due Process, *i.e.*, as long as the "minimum contacts" test of personal jurisdiction is met, as it is in this case, this US District Court in California may enjoin the defendants' business practices as requested herein and may hold them liable under Section 17200, because their conduct as alleged herein has adversely affected California residents.

19.    Venue is proper in this judicial district pursuant to 28 USC §1391(b)(2) and (c)(3). A substantial part of the events or omissions giving rise to the claim

occurred in this District; Knight has already claimed Aitekz is not resident in the United States. Therefore Aitekz may be sued in any judicial district.[1]

## COUNT I: MANDATORY INJUNCTION

(Conduct Prohibited by the California Business & Professions Code §17200 *et seq*)

20.     Chambers realleges paragraphs 1-19.

21.     Chambers has standing to bring the claims and request to permanently enjoin the unlawful, fraudulent and unfair practices alleged in this Count I. She has suffered injury in fact and has lost money or property as a result of the acts alleged herein. Specifically, Chambers is a California citizen, and an Aitekz creditor and stakeholder. She is acting to protect her interests, the interests of Aitekz stakeholders, and the general public to be protected from fraud and deceit as contemplated by Section 17200. As of June 2018, Knight valued Aitekz at GBP 4,000,000 such that Chambers shares would have been worth GBP 80,000.

---

[1] Chambers could have sued in the U.S. District Court, Northern District of California (San Jose). But her forum choice deserves a strong presumption, substantial deference, great weight and should prevail. Under no circumstances should the Northern District be available for convenience of two foreign nationals who are running a UK company illegally from California. Merely switching inconvenience to Chambers would subvert the interests of justice and the purpose of 28 U.S.C. § 1404(a), which is to prevent the waste of time, energy and money and to protect Chambers and the public against unnecessary inconvenience and expense. Regardless of District, the relevant California governing law and applicable public policies are the same. Many of the relevant agreements were negotiated in this District, and litigation costs in and traveling to the Northern District would be far greater for Chambers.

## **Unlawful Practices**

22.    The practices of which Chambers complains in this paragraph as violations of and as prohibited by Section 17200, are unlawful under Section 17200 because they are forbidden by other, underlying law. Specifically, Lucas-Mudd and Knight, as founders, Directors, and controlling shareholders of Aitekz and especially Knight who, on information and belief, has the personal financial wherewithal to prevent insolvency or liquidation of Aitekz, have a duty to use their personal means to ensure that their representations to the public are and remain true, *i.e.*, that they continue to infuse capital into Aitekz. They also both know or ought to know that Aitekz is insolvent, and that because of their actions or inactions there may be no reasonable prospect that Aitekz can avoid going into insolvent liquidation as contemplated by the UK Insolvency Act 1986, or involuntary bankruptcy in the United States. But in and from California, and to the detriment of Chambers, the other California Aitekz stakeholders, and general creditors who are owed approximately $350,000, Lucas-Mudd and Knight are using the aspect of UK law that allows offshore Directors of a UK company to operate a UK company from offshore, to operate Aitekz in violation of UK law and Section 17200 by, among other things, seeking financing and seeking to incur new debt in California, but also seeking to delay, hinder or defraud actual and potential trade creditors and potential lenders by concealing or attempting to conceal the insolvency, and thus engaging in (1) fraudulent trading under §29 of the UK

8

Companies Act of 2006, and (ii) wrongful trading in and outside of the UK on behalf of a UK company, both of which are crimes and civil wrongs under Section 214 of the UK Insolvency Act 1986 and other applicable UK law. The civil wrongs and criminal activity in which Lucas-Mudd and Knight are engaging can - minimally, under UK law - make Lucas-Mudd and Knight personally liable for company debts to creditors and / or liable to make such contribution to the company's assets to cure the insolvency and to ensure their representations to the public about Aitekz and its finances are and remain true.

## **Fraudulent Practices**

23.    The fraudulent business practices of which Chambers complains in this paragraph and those which are alleged above in paragraph 22 and incorporated into this paragraph 23, are prohibited by Section 17200 as fraudulent practices, because they are likely to deceive the public. Specifically, in addition to the allegations in paragraph 22, the aforesaid mandatory disclosures and filings with the UK Companies House which, from California, Lucas-Mudd and Knight caused to be made on behalf of Aitekz in 2018, are fraudulent and misleading because such filings falsely state that Aitekz founders continue to contribute capital (as alleged above more specifically in paragraph 13 of this Complaint). The UK's Companies House, somewhat akin to the United States Securities Exchange Commission, lists Knight's role in Aitekz (among others) as "1 active person with significant control" with "Ownership of shares – More than 25% but not more than

50%"..."[2] Especially Knight, as a controlling person, is guilty of fraud under Section 17200, because he is personally responsible and in control of the representations and misrepresentations Aitekz makes to the public, and is responsible for creating the impression that Aitekz founders continue to infuse capital, when such is either not true or is no longer true. Worse, Knight has recently characterized his financial relationship to Aitekz as a lender of roughly $1 million, which if booked as loans in the books and records of Aitekz do not represent capital of the company, but could have priority ahead of creditors or others with claims that should have priority over Knights' claimed loans to Aitekz.

## **Unfair Practices**

24.    The unfair business practices of which Chambers complains are those unlawful and fraudulent acts alleged above in paragraphs 22 and 23 hereof, which are hereby incorporated into this paragraph, and are also prohibited by Section 17200 as unfair, because they offend established public policy, are immoral, unethical, oppressive, and unscrupulous.  Specifically,

(a) On information and belief, Knight is concealing from Aitekz stakeholders, creditors and others that he believes (as he has recently written to Chambers) that Lucas-Mudd has over time fabricated or misrepresented to Aitekz stakeholders, actual and potential investors and creditors the continuing existence

---

[2] https://beta.companieshouse.gov.uk/company/10117990/persons-with-significant-control

and interest in investing in Aitekz on the part of billionaire and millionaire investors; and

(b) On information and belief, Knight has at times material to this action, made personal loans to Lucas-Mudd that if not disclosed in the company books and records, should have been disclosed in company books and records to give all stakeholders and the public a proper financial understanding of Aitekz and of Lucas-Mudd, and/or to clarify on the books and records that if such loans are ultimately treated as obligations of Aitekz to Knight, that they are fully subordinated to the rights of all other stakeholders, in liquidation or otherwise, including but not limited to Knight treating personal loans to Lucas-Mudd as any part of his claimed loans to Aitekz (if that is what Knight has done);

(c) If undisclosed, personal loans by Knight to Lucas-Mudd are immoral, unethical, oppressive, unscrupulous and materially misleading if not also concealed to create and advance or promote the misleading impression in Aitekz public filings that Lucas-Mudd is a founder with means and is contributing capital to Aitekz on a continuing basis, when in fact, on information and belief, he is borrowing money from Knight to pay his most basic living and related personal expenses in Santa Cruz County and elsewhere.

25.    The UK's Companies Act of 2006 ("the Act") codifies numerous duties of a director which Lucas-Mudd and Knight are breaching in their unlawful, fraudulent and unfair operation of Aitekz from California. These duties are:

a.      To act in accordance with the Company's constitution and for proper purposes;

b.      To promote the success of the Company;

c.      To exercise independent judgment;

d.      To exercise reasonable care, skill and diligence;

e.      To avoid conflicts of interest;

On information and belief, Lucas-Mudd and Knight have also breached their codified duties by failing to procure or maintain in full force adequate Directors' and Officers' liability insurance to cover their various actual or potential, ultimate liabilities to Aitekz.

26.     The codified director duties are not exclusive. Specifically, Lucas-Mudd and Knight have heightened common law duties to consider the interests of creditors in times of actual or threatened insolvency and have breached and are actively breaching at least this common law duty if not others, also.

WHEREFORE, Chambers respectfully requests that pursuant to California Business & Professions Code §17203, this Court permanently and mandatorily enjoin the aforesaid unlawful, fraudulent and unfair practices prohibited by Section 17200, as follows:

A.      Require Lucas-Mudd and Knight to make such financial contributions to Aitekz as the Court may determine, subject to the proofs, which will be sufficient and proper to make and keep Atiekz solvent for so long as Lucas-Mudd

and Knight are telling Aitekz stakeholders and the public that Aitekz is solvent, and consistent with their personal liability as alter egos of Aitekz.

B.    Enter an Order that Knight, and his wife Selina M. Knight, as Trustees of the Knight Living Trust, are holding the aforesaid Los Altos Hills, California - the Aitekz US office - property in constructive trust for the benefit if Aitekz stakeholders and creditors;

C.    Enter an order of provisional, prejudgment attachment to enable Aitekz creditors to preserve the value of a potential final judgment by preventing Knight as Trustee of the Knight Living Trust from transferring, encumbering, dissipating or concealing assets available to satisfy an ultimate judgment, and in accordance therewith:

1.    Hold a preliminary hearing;

2.    Enter an order of pre-judgment attachment, which specifically finds that the relationship of Lucas-Mudd and Knight to Aitekz and its stakeholders and creditors is inherently contractual, express or implied as contemplated under Ca. Civ. Pro. § 483.010(a) and Ca. Civ. Pro. § 483.010(d); this is a commercial matter as contemplated under Ca. Civ. Pro. § 483.010; the amounts of money owed Aitekz creditors are claims that are fixed or readily ascertainable amounts in excess of $75,000 excluding costs, interest and attorney fees; all of said obligations of Aitekz to its creditors are ascertainable from the contracts between Aitekz and said creditors; and that for all of the property held or controlled by Lucas-Mudd or

13

Knight, within California, to be subject to attachment there is a statutory method of levy for the property, Ca. Civ. Pro. § 487.010(a),(b); and that said attachment should apply and be a lien thereon, secured by a sufficient portion of Chambers' Aitekz shares to satisfy any bonding requirement, against:

(a) Any account receivable held by Knight due and owing from Lucas-Mudd,

(b) The real estate identified above in paragraphs 8 - 10, namely; 22548 Ravensbury Avenue, Los Altos Hills, Santa Clara County, CA 94024, which is among other things the Aitekz California US-based office with unencumbered equity believed to exceed $1 million, which equity should be available to all Aitekz stakeholders, creditors, etc., to cure the insolvency, unlawful, fraudulent and unfair conduct of Lucas-Mudd and Knight;

D. An award of reasonable attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5.

G. For such other and further relief as the Court deems necessary and proper.

## COUNT II: ACTION OF ACCOUNTING

27. Chambers realleges paragraphs 1-19, and 22-26.

28. Chambers has standing as an Aitekz stakeholder and person to whom fiduciary duties are owed to bring this action for an accounting.

29.    The extent of damage from the aforesaid breaches of fiduciary duties by Lucas-Mudd and Knight, the extent of insolvency (e.g., lack of receivables, capitalization, assets and liabilities) can only be ascertained by an accounting; namely the complete books and records of Aitekz,

WHEREFORE, Chambers respectfully requests that this Court enter an order requiring Lucas-Mudd and Knight to account thoroughly for the finances of Aitekz, and to produce the complete financial books and records of Aitekz for copying and inspection by Chambers and any Aitekz stakeholder and/or their accountants or attorneys in this District.

## COUNT III: APPOINTMENT OF RECEIVER

30.    Chambers realleges paragraphs 1-19 and 22-26.

31.    This Court is empowered by law to appoint a receiver under California Code of Civil Procedure §564(a) and California Business & Professions Code Section 17203.

32.    Apart from her standing under Section 17200, Chambers also has standing in this action under California Code of Civil Procedure §564(b)(1) to make this "application of the plaintiff, or of any party whose right to or interest in the property or fund or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured."

15

33.    Chambers has established grounds Section 17200 and under §556(b) (1) because under both Section 17200 and California Code of Civil Procedure §564(6), Aitekz is a corporation doing business in California that is insolvent, or in imminent danger of insolvency.

WHEREFORE, Chambers respectfully requests the following:

A.    For the appointment of a receiver to take possession and control of Aitekz and to conserve and manage it and to collect any and all receivables, revenues or profits - if any - therefrom, and to assess, manage and administer the so-called "refunding opportunities" which as of a week prior to the filing of this Complaint, Knight represented will exist in 2019 for the benefit of Aitekz creditors; take control of any bank accounts in the name of or for the benefit of Aitekz, including and any bank accounts in the names, personally, of Lucas-Mudd and Knight in the State of California, or securities held on account of Lucas-Mudd or Knight by any US-based broker-dealer, together with a finding that Lucas-Mudd and Knight are the alter egos of Aitekz if for no other reason they are engaging in fraudulent and wrongful trading, which are civil wrongs and intentional torts from which no corporate veneer (of Aitekz or any corporation) can shield them or their individual assets to the detriment of Aitekz stakeholders;

B.    For an order that Lucas-Mudd and Knight or anyone holding under them deliver possession of bank accounts, securities and property which either of

16

them have in the State of California, and any books of account reflecting the same to the receiver, including the books and records of Aitekz;

C.     For reasonable attorney's fees;

D.     For costs of suit incurred herein; and

E.     For such other and further relief as the Court deems necessary and proper.

## COUNT IV: BOOK ACCOUNT

34.    Chambers realleges paragraph 1-19.

35.    Chambers provided business consulting labor and services to Lucas-Mudd, Knight and Aitekz in the sum of $82,500, approximately 25% of which Chambers provided to and/or invoiced Scredible I. Lucas-Mudd liquidated Scredible I in Ireland and reincorporated as Scredible II in England, as a mere continuation of Scredible I, and/or to escape potential or actual liability for Scredible I's debts, possible self-dealing, or possible breaches of fiduciary duty in the formation of Scredible I, among which on information and belief concerned a California investor with roughly a $3 million stake in Scredible I.

36.    On information and belief, Lucas-Mudd purposely withheld and concealed Scredible I's debt to Chambers from the Ireland liquidation process while consistently and repeatedly promising Chambers that she would be paid for her work for Scredible I and for her invoices.

17

37.    Within the last four years, defendants became indebted to Chambers on an open book account for money due in the sum of $82,500, which with accrued prejudgment interest to the date of this filing is $97,649. Knight as a Director of Aitekz who, with Lucas-Mudd is operating Aitekz illegally from California, is personally liable for all of the Aitekz debts, including but not limited to Aitiekz's and Lucas-Mudd's successor liability to Chambers for her services to Scredible I.

38.    The reasonable value of Chambers services which is due and unpaid despite Chambers' demands is $82,500, with prejudgment interest having accrued beginning from February 16, 2015 (Scredible I invoices) and November 1, 2016 (Aitekz / Scredible II invoices), such that as of the filing of this Complaint, the total sum due Chambers is $97,649. Prejudgment interest at the applicable California statutory rate will continue to accrue going forward from the date of the filing of this Complaint.

## COUNT V: ACCOUNT STATED

39.    Chambers realleges paragraph 1-19, and 35 - 37.

40.    In the last four years, defendants became indebted to Chambers because an account was stated in writing by and between Chambers and defendants in which it was agreed that defendants were indebted to Chambers.

41.    The reasonable value of Chambers services which is due and unpaid despite Chambers' demands is $82,500, with prejudgment interest having accrued beginning from February 16, 2015 (Scredible I invoices) and November 1, 2016

(Aitekz / Scredible II invoices), such that as of the filing of this Complaint, the total sum due Chambers is $97,649. Prejudgment interest at the applicable California statutory rate will continue to accrue going forward from the date of the filing of this Complaint.

## COUNT VI: WORK, LABOR AND SERVICES PROVIDED

42.     Chambers realleges paragraph 1-19, and 35 - 37.

43.     Within the last four years, Chambers provided to defendants work, labor and services which were rendered at the special instance of Lucas-Mudd, Knight and Aitekz and for which defendants promised to pay Chambers.

44.     The reasonable value of Chambers services which is due and unpaid despite Chambers' demands is $82,500, with prejudgment interest having accrued beginning from February 16, 2015 (Scredible I invoices) and November 1, 2016 (Aitekz / Scredible II invoices), such that as of the filing of this Complaint, the total sum due Chambers is $97,649. Prejudgment interest at the applicable California statutory rate will continue to accrue going forward from the date of the filing of this Complaint.

## COUNT VII: BREACH OF CONTRACT FOR BONUS

45.     Chambers realleges paragraph 1-19, and 35 - 37.

46.     Beginning in or about the first Quarter of 2016, i.e., approximately March 2016 and thereafter, defendant Lucas-Mudd repeatedly promised Chambers a  bonus of $40,000 USD  as additional inducement to continue receiving services

from Chambers, and in reliance on this bonus promise, Chambers continued to render requested services.

47.    Said bonus is reflected in the work papers exchanged between Chambers and Lucas-Mudd.

48.    Subsequent to the filing of this lawsuit Chambers has learned that there are other Aitez creditors who are receiving payments for their services; on information and belief such payments are being made by defendant Knight, personally.

49.    Chambers has now demanded payment of the bonus from all three defendants, but they have failed and refused to pay Chambers her bonus despite their vehement protestations that defendant Aitekz is not insolvent and therefore not engaging in wrongful or fraudulent trading under UK law, as alleged herein.

50.    Defendants have breached their contractual obligation to Chambers to pay her the bonus.

51.    Chambers has fully performed her obligations to Defendants, and none have, before or after the filing of this lawsuit, ever claimed otherwise.

52.    Defendants' breach of contract regarding the bonus is the proximate cause of damage to Chambers in the amount of $40,000 USD.

WHEREFORE, Chambers respectfully requests entry of a judgment on Counts IV - VI and order on those causes of action as follows:

A.      For the sum of $82,500, the unpaid balance;

B.      For the sum of $15,345, which is accrued prejudgment interest at the applicable California statutory rate from February 16, 2015 (Scredible I invoices) and November 1, 2016 (Aitekz / Scredible II invoices);

C.      Prejudgment interest at the applicable California statutory rate that continues to accrue going forward from the date of the filing of this Complaint.

D.      For the sum of $40,000 USD for the bonus addressed in Count VII.

E.      For costs of suit: $618 incurred herein to the date of this filing;

F.      For such other and further relief as the Court deems necessary and proper.

Dated: March 7, 2019.

JODY F. CHAMBERS, *pro se*
747 E. Solana Circle
Solana Beach, CA 92075
JFCNotice@gmail.com